O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOMADIX, INC., | Case No. CV 09-08441 DDP (VBKx) |
| Plaintiff, | **CLAIM CONSTRUCTION ORDER** |
| v. | [Plaintiffs' Opening Claim Construction Brief Filed on June 11, 2010, <u>Markman</u> hearing held on October 15, 2010] |
| HEWLETT-PACKARD COMPANY, a Delaware corporation; WAYPORT, INC., a Delaware corporation; IBAHN CORPORATION, a Delaware corporation; GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., a Canadian corporation; GUEST-TEK INTERACTIVE ENTERTAINMENT, INC.; a California corporation; LODGENET INTERACTIVE CORPORATION, a Delaware corporation; LODGENET STAYONLINE, INC., a Delaware corporation; ARUBA NETWORKS, INC.; a Delaware corporation; SUPERCLICK, INC., A Washington corporation; SUPERCLICK NETWORKS, INC., a Canadian corporation, | |
| Defendants. | |

Plaintiff Nomadix, Inc. is the owner of U.S. Patent Numbers 6,130,892 ("the '892 Patent"); 7,088,727 ("the '727 Patent"); 7,554,995 ("the '995 Patent"); 6,636,894 ("the '894 Patent"); 7,194,554 ("the '554 Patent"); 6,868,399 ("the '399 Patent"); 6,789,110 ("the '110 Patent"); 7,689,716 ("the '716 Patent"); and 6,875,009 ("the '009 Patent"). The technology at issue generally facilitates network access, e.g. access to the Internet, by mobile computers and is widely used at hotels, airports, and public locations.

More specifically, the '892 Patent, '995 Patent, '099 Patent, and the '727 Patents permit users to access the Internet even though their computers are not configured for the particular network they are visiting. These patents resolve such issues as, for example, when a laptop is configured to connect to only a certain "home" network or, alternatively, to a "proxy server," but has moved to a "foreign" network. These patents aid with connectivity so that, for example, a business traveler using a company laptop can readily use a hotel's network without manually reconfiguring their laptop for the foreign network.

The '894 Patent, '554 Patent, and '716 Patent concern the ability of a network operator to control and customize network access. For example, the '894 Patent involves the use of a gateway to redirect a computer to a login web page (e.g., a hotel login page). This technology permits network operators to, among other things, grant network access to guests only after they agree to pay for the service. The '399 Patent relates to network usage charges and helps facilitate the billing by a network operator of network

users by, for example, formatting the network usage data to look like a telephone call record.

Nomadix alleges that Defendants have infringed these eight patents.

## I.  THE CLAIM CONSTRUCTION PROCESS

A patent infringement analysis involves two steps: (1) determining the meaning and scope of the patent claims asserted to be infringed; and (2) comparing the properly construed claims to the accused device. See generally Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). The first step in this sequence is presently before the Court.

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). The construction of a particular patent claim term presents a question of law, to be decided by the Court. Markman, 517 U.S. at 391.

The starting point for claim construction is a disputed term's ordinary meaning. Phillips, 415 F.3d at 1313. Ordinary meaning, in the patent claim construction context, is the meaning that a person of ordinary skill in the art would attribute to a claim term in the context of the entire patent at the time of the invention, i.e., as of the effective filing date of the patent application. ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1374 (Fed. Cir. 2009).

The claims, of course, do not stand alone; a person of ordinary skill in the art "is deemed to read [a] claim term not only in the context of the particular claim in which the disputed

3

term appears, <u>but in the context of the entire patent, including the specification</u>." <u>Phillips</u>, 415 F.3d at 1313-14 (emphasis added). Accordingly, the specification is "the <u>primary basis</u> for construing the claims" in light of the "statutory requirement that the specification describe the claimed invention in full, clear, concise, and exact terms." <u>Id.</u> at 1315 (internal quotation marks omitted) (emphasis added).

In determining the proper construction, the claim language, specification, and prosecution history – together referred to as the "intrinsic evidence" – are of paramount importance. <u>Id.</u> at 1315 ("[T]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history."(internal quotation marks omitted)). Consistent with this principle, courts have recognized that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. <u>Id.</u> at 1316. In such cases, the inventor's lexicography governs. <u>Id.</u> In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. <u>Id.</u>

While the court interprets claim terms in light of the specification, it should generally not "import[] limitations from the specification into the claims absent a clear disclaimer of claim scope." <u>Andersen Corp. v. Fiber Composites, LLC</u>, 474 F.3d 1361, 1373 (Fed. Cir. 2007). "[T]he distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." <u>Phillips</u>, 415 F.3d at 1323.

4

In walking this "tightrope," Andersen, 474 F.3d at 1373, the court hews to the question of "how a person of ordinary skill in the art would understand the claim terms." Phillips, 415 F.3d at 1323.

Consideration of intrinsic evidence will resolve any claim term ambiguity in most circumstances. See id. at 1313-14. Where it does not, however, the court may consider certain "extrinsic evidence." See id. at 1317. Expert testimony, for example, may provide helpful background on the technology at issue, explain how an invention works, or establish that a claim term has a particular meaning in the relevant field. See id. at 1319. Dictionaries and treatises may also be helpful in this regard. Id. at 1318. Precedent counsels against reliance on dictionary definitions at the expense of the specification, however, because such reliance "focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." Id. at 1321; see also Nystrom v. Trex Co., 424 F.3d 1136, 1145 (Fed. Cir. 2005).

The court's ultimate goal is to construe the disputed terms in a manner consistent with the way the inventor defined them and a person of ordinary skill in the art would understand them. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." Phillips, 415 F.3d at 1316 (internal quotation marks omitted).

**II. CONSTRUCTION OF CLAIM TERMS**

    **1. '716 patent**

        1. "network location of the user host device"

| NOMADIX'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| No construction necessary. However, if the Court is inclined to construe the term, Nomadix proposes: a location at which the user host device is connected to the network | connection port through which the user host device configured with a permanent IP address of the home network accesses the network | a location at which the user host device is connected to the network |

The parties dispute the meaning of "network location" and whether the user host device should be construed as a device from the "home" network. Defendants argue that the specification of the '716 Patent defines the user host device's network location as a specific communication port. In support of their definition, Defendants point to Figure 1, which shows the overall configuration of the claimed system and states that the devices: "For example . . . can be plugged into ports that are located in different rooms of a hotel, business, or a multi-dwelling unit," or "[a]lternatively, . . . can be plugged into ports in an airport, an arena, or the like." ('716 Patent 20:3-7, 30-41-45.) Because each of the recited locations is defined in terms of where a specific port is, Defendants argue that a network location must necessarily be a connection through a port. (Def.'s Brief 36:10-18.)

The court is not persuaded by Defendants' argument. First, the specification Defendants rely on does not define "network location," but rather, describes particular embodiments. It is

6

improper, without more, to limit the claims to specific embodiments.  <u>Andersen Corp.</u>, 474 F. 3d at 1373.  In looking at the claim language, it is clear that claims 25-35 affirmatively provide that a network location is not limited to a port, but rather, can be, inter alia, a hotel room, an apartment, a multi-resident dwelling, a floor within a building, an airport kiosk, a retail outlet, <u>or</u> a port. ('716 Patent 37:5-30.)  Furthermore, to the extent that Defendants' construction requires a physical port that the user host device is plugged into, their construction excludes wireless embodiments disclosed in the specification.  For example, the patent describes an embodiment in which access is by "a wireless access point," i.e. "for signals transmitted via a wireless network." ('716 Patent 13:5-10.)  <u>See</u> <u>In re Katz Interactive Call Processing Patent Litig.</u>, 2011 U.S. App. LEXIS 3213, at *52 (Fed. Cir. 2011) (""[T]here is a strong presumption against a claim construction that excludes a disclosed embodiment . . . .").

    Next, Defendants contend that the user host device must be configured with a permanent IP address, which corresponds to the device's "home" network.  In support of their definition, Defendants point out that the network-packet-translation module modifies packets coming from the user host device to replace the IP address of that device with the IP address of the gateway.  This function, Defendants maintain, "would be completely unnecessary if the user host device were not configured with a permanent IP address." (Def.'s Brief 37:1-10.)  Defendants argument is premised on the belief that address translation is only meaningful if a

device is configured with a permanent address. This premise is in direct conflict with the intrinsic evidence.

For example, Figure 1 depicts a device that is dynamically configured so it can work with a DHCP server. ('716 Patent, Fig. 1.) In describing the Figure 1 embodiment, the '716 Patent explains that:

> In the embodiment shown in FIG. 1, the computer system employs dynamic host configuration protocol (DHCP) service, which is a protocol well known to those of skill in the art and currently implemented in many computer networks. In DHCP networks an IP address is assigned to an individual computer of the plurality of computers when the computer logs onto the computer network through communication with the gateway device. The DHCP service can be provided by an external DHCP server or it can be provided by an internal DHCP server located within the gateway device.

('716 Patent, Ex. 7, 21:1-11 (numerical references omitted).) Devices that are configured for DHCP have neither a home network or a permanent IP address.

Furthermore, Figure 11a and Figure 11b illustrate an embodiment of the address modification that the network-packet-translation module of claim 1 is configured to perform, and those embodiments also make it clear that the IP address is not necessarily static. As the specification explains in describing those embodiments: "The host computer will generate network packets using the current configuration stored in the host computer . . . . This configuration information is either manually configured in the host computer or obtained using DHCP." ('716 Patent, Ex. 7, 28:12-16.)

In sum, Defendants incorrectly import limitations that are not supported by the disclosed embodiments. Accordingly, the court

adopts Plaintiff's proposed definition and concludes that "network location of the user host device" is best understood to be "a location at which the user host device is connected to the network."

**2. '894 patent**

1. The order of steps of all claims

| NOMADIX'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| No construction necessary | the steps of all claims must be performed in the order listed | No construction necessary |

The parties dispute whether the language used in the claims of the '894 Patent requires that all steps in the claims must be performed in the order recited.

Defendants argue that "logic and grammar" support their proposed construction. (Def.'s Brief 25:15-24 citing <u>Altiris, Inc. v. Symantec Corp.</u>, 318 F.3d 1363, 1369 (Fed. Cir. 2003)).  As a matter of logic, Defendants contend, each of the seven steps of claim 1 must be preformed in the recited order, namely:  (1) receiving, (2) determining, (3) storing, (4) modifying and communicating, (5) responding, (6) intercepting and modifying, and finally (7) sending.  (<u>Id.</u> 26:1-6.)  Furthermore, Defendants maintain, the grammar imposes the same ordering.  For example, "storing" and "modifying and communicating" are only performed "if redirection is required."  (<u>Id.</u> 26:13-18.)

Plaintiff argues that Defendants' construction completely excludes embodiments where multiple requests must be received

9

1  before performing, determining, or other steps.  (Nomadix Reply
2  26:18-28.)  The court agrees with Plaintiff that the ordinary claim
3  language includes these multi-request embodiments.  For example,
4  Claim 1 claims:

> A method for redirecting an original destination address
> access request to a redirected destination address, the
> method comprising the steps of:
>     Receiving at a gateway device, all original
>     destination address access requests originating from
>     a computer;
>     Determining, at the gateway device, which of the
>     original destination <u>address requests</u> require
>     redirection . . . .

10 ('894 Patent, 13:45-55 (emphasis added).)  Claim 1 undeniably
11 anticipates multiple address requests.  The court is particularly
12 persuaded that storing can occur at various stages of the process
13 and is not limited to after determining and before modifying a
14 request.  For example, "storing" can occur before receiving, where
15 the gateway uses the original destination address to open a
16 connection and before it receives a HTTP original destination
17 address request.  As the specification explains:

> [T]he gateway device . . . receives the user's HTTP
> request for a web page . . . .  It will be appreciated,
> however, that to receive the HTTP request the gateway
> device . . . must initially open a Transmission Control
> Protocol (TCP) connection to a server in line with the
> user requested internet address.

('894 Patent, Ex. 5, 9:16-26.)  Because, to establish the
connection, the gateway device already has the destination address
before it receives the HTTP request, the gateway device can store
the destination address before receiving the HTTP request.
Plaintiff explains that "[s]toring the address in this manner . . .
will ensure that destination address are stored 'if redirection is

10

required' – even if that is determined in a later step." (Pl.'s Reply 29:5-9.)

As a general rule, it is erroneous to construe the steps of a method claim as necessarily occurring in the order in which they are recited. <u>See, e.g.</u>, <u>Altiris, Inc. v. Symantec Corp.</u>, 318 F.3d 1363, 1369-71 (Fed. Cir. 2003); <u>Interactive Gift Express, Inc. v. Compuserve Inc.</u>, 256 F.3d 1323, 1343 (Fed. Cir. 2001). Here, there is no language in claim 1 that explicitly requires that each of its steps be performed in the order recited. Additionally, the court finds no support in the specification, embodiments, figures, or additional claim language for a rigid ordering of the claim steps. Accordingly, the court rejects Defendants' proposed construction of claim 1 and claim 6, i.e., that the steps of all claims must be performed in the order listed. Rather, the court finds that the Patent anticipates multiple requests and flexibility in the order of claims steps.

2. "administrator"

| NOMADIX'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| No construction necessary | a person who administers the gateway device | No construction necessary |

Defendants would narrow the claim term "administrator" to mean "a person who administers the gateway device." Plaintiff avers that "administrator" is well understood and needs no construction. The term is used in Claim 1 as follows:

> Responding, at the redirection server, to the modified request with a browser redirect message that reassigns the modified request to an <u>administrator</u>-specified, redirection destination address.

11

('894 Patent, Claim 1 (emphasis added)).

    Defendants point to language in the specification that states that "the computer network can provide access to users and direct the users to portal pages established by the user, network administrator or another entity." ('894 Patent 3:9-33.) And, language in the specification that explains that "the gateway administrator can readily alter the parameters or other settings in order to tailor the service according to their particular application." ('894 Patent 9:61-64.) Finally, Defendants rely on the statement that "the gateway administrator will have the capability to dynamically change the information supplied in the portal page based on many factors." ('894 10:31-36.) Defendants argue that these statements "make clear that the 'administrator' is a person who administers the gateway device." (Def.'s Brief 29:12-13.) Defendants' proposed construction improperly imports narrowing limitations from preferred embodiments and finds a limitation in the specification that is unsupported. The court finds no support in the specification for an interpretation of "administrator" that is limited to a person. The functions pointed to by Defendants are all functions that are not particular to administration by a person.

    It is fundamental that "[c]laim construction begins and ends in all cases with the actual words of the claim," Becton, 616 F.3d at 1254 (Fed. Cir. 2010), and the court finds no support in the claim language to limit "administrator" to a person. "[C]ourts can neither broaden nor narrow claims to give the patentee something different than what he set forth." Texas Instruments, 988 F.2d at 1171. Here, Defendants attempt to narrow the administrator to "a

person" is unsupported.  Accordingly, the court concludes that Defendants' proposed construction is improperly limiting.

**3. '554 patent**

1. "determining the access rights of the source based upon the identification of the source, wherein the access rights define the rights of the source to access destination sites via the network"

| NOMADIX'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| No construction necessary | determines the rights of the source to access particular destination sites via the network based upon the identity of the source and the content and/or destination requested | No construction necessary |

The '554 Patent claims generally a system for controlling and customizing access to a network by a source, where the source is a computer or its user. ('544 Patent Abstract.)  With respect to this patent, Defendants seek construction of two similar terms that both concern the determination of rights to access destination sites on the network.  These terms are found in claims 10 and 17. Nomadix maintains that the terms do not require construction.

Claim 10 claims a system for controlling access to a network by a source (e.g. a computer) whereby a gateway device receives a request for access to the network. ('554 Patent 15: 10.)  That gateway device communicates with a "source profile database" and, together, the gateway device and profile database communicate with the Authentication, Authorization, and Accounting ("AAA") server. (Id.)  The AAA server "determines the access rights of the source,

13

1  wherein the access rights define the rights of the source to access
2  destination sites via the network." (Id.)
3      Defendants propose that the proper construction of this term
4  is that the AAA "determines the rights of the source to access
5  particular destination sites via the network based upon the
6  identity of the source and the content and/or destination
7  requested." (Defs.' Brief 30: 1-5.) Nomadix argues that
8  Defendants impose unsupported limitations. The court agrees.
9      Both parties agree that the '554 Patent permits access to a
10 network based on an identifying attribute associated with the
11 source. Defendants, however, would require the identification of
12 the source by way of two specific attributes — the source's
13 identity and/or the destination requested — and would require that
14 this identification be a precondition to the determination of
15 access rights. The plain language of Claim 10 does not require
16 either limitation. First, the language of Claim 10 does not limit
17 access to identity of a source or the content/destination
18 requested. The preferred embodiments discussed in the
19 specification include examples where a source is authenticated by
20 the gateway device "based on attributes," which "<u>can include</u> the
21 identity of a particular user or computer, location through which
22 access is requested, requested network or destination, <u>and the</u>
23 <u>like</u>." ('544 Patent 7:45-50 (emphasis added).) Access is not
24 limited to sources that can be authenticated, as Defendants argue,
25 based on identity or content requested.
26     Claim 17, in contrast with Claim 10, is expressly limited to
27 determination of access rights "based upon the identification of
28 the source." ('554 Patent 16:22-27.) With respect to Claim 17,

14

Defendants inclusion of the added requirement that access be assessed based on not only the identity of the source but also the content or destination requested is not supported by the plain language of the claim or, as discussed above, by the preferred embodiment.

Furthermore, the plain language of the two access terms at issue in Claim 10 and Claim 17 does not require the order of steps Defendants propose. Indeed, the claim language states that the gateway device "receives a request from the source for access and provides the source computer with access." ('554 Patent 15:23-26.) A separate server, i.e. the AAA server, which is in communication with the gateway device, "determines if the source is entitled to access the network based upon access information stored within the source profile database . . . ." ('554 Patent 15:37-41.) There is no express requirement that these steps take place in the particular order that Defendants would require.

For the reasons explained, the court finds that no construction is necessary of the "access right" term as found in the '554 Patent's Claim 10 and Claim 17.

### 3. "regardless of network configurations"

| NOMADIX'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION | COURT CONSTRUCTION |
|---|---|---|
| No construction necessary. If the Court is inclined to construe the term, Nomadix proposes: regardless of network address settings | regardless of the hardware, MAC addresses, IP addresses, and networking protocols used by the network and the source computer | regardless of network address settings |

1    The parties dispute the meaning of "regardless of network
2 configurations." Defendants argue that the prosecution history
3 supports their proposed construction, which would define the term
4 as follows: "regardless of the hardware, MAC addresses, IP
5 addresses, and networking protocols used by the network and the
6 source computer." (Defs.' Brief 32:4-9.) Nomadix argues that
7 construction is not necessary and proposes, that if the court
8 should construe the term, a more apt construction would be
9 "regardless of network address settings."
10   The disputed term is found in Claims 10 and 17 of the '554
11 Patent. The court looks first to the claim language. Both claims
12 describe a gateway device, which receives a request from the source
13 for access to the network and then provides that source with
14 "access to the network regardless of network configurations via a
15 packet translation learned during self configuration . . . ." The
16 heart of the dispute here is whether a network configuration is a
17 network address, e.g. an IP address, or if it must include, as
18 Defendants suggest, "hardware, MAC addresses, IP addresses, and
19 networking protocols." The court has reviewed the prosecution
20 history, and the court finds no support for the limitations
21 Defendants propose.
22   Defendants are correct that the examiner initially rejected
23 the claims at issue in view of U.S. Patent No. 6,385,653
24 ("Sitaraman patent"), which involved a "protocol gateway" that
25 provided network access to client computers, which use application
26 protocols that the gateway is configured to support. See Cooper
27 Decl., Ex. 37, Ex. 18. Thereafter, Nomadix once again amended the
28 claims to make it clear that the gateway provides network access

"regardless of network configuration," but the examiner again rejected this claim in view of Sitaraman. Finally, Nomadix successfully amended the claims to clarify that a gateway device provides access "regardless of network configuration <u>via a packet translation learned during self configuration</u>." <u>Id.</u> Ex. 22. This amendment emphasized packet translation, a process that relates to network addresses. Importantly, at no point did Nomadix or the examiner discuss or add any language related to "hardware," "MAC addresses," or "network protocols." Accordingly, the court finds these additional proposed requirements unsupported by the claim language, the specifications, or the prosecutorial history. Because the court concludes that some construction would aid the jury in understanding the term, the court adopts Nomadix's proposed construction.

**III. CONCLUSION**

For the reasons set forth above, the court adopts the claim constructions described above.

IT IS SO ORDERED.

Dated: August 31, 2011

DEAN D. PREGERSON
United States District Judge