John B. Sganga, Jr. (SBN 116,211)
john.sganga@kmob.com
Douglas G. Muehlhauser (SBN 179,495)
doug.muehlhauser@kmob.com
Perry D. Oldham (SBN 216,016)
perry.oldham@kmob.com
Mark Lezama (SBN 253,479)
mark.lezama@kmob.com
Alan G. Laquer (SBN 259,257)
alan.laquer@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
NOMADIX, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Civil Action No. CV09-08441 DDP (VBKx) <br><br> **NOMADIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 6,996,073 AND 7,580,376** <br><br> Honorable Dean D. Pregerson |

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ................................................................................... 1

II. LEGAL STANDARD ............................................................................. 2

III. UNDER THE '073 AND '376 PATENTS, A SPECIFIC GROUP OF USERS MUST BE THE ONLY USERS WITH ACCESS TO CERTAIN CONTENT OR CONFERENCE SERVICES ............................................................................................... 3

    A. The '073 and '376 patents require providing content or conference services and restricting access to only selected users ................................................................................. 3

    B. The patent claims all require that access to the content or conference services be restricted to the specific group ........................................................................................... 5

IV. NOMADIX IS ENTITLED TO SUMMARY JUDGMENT OF NONINFRINGEMENT ................................................................. 6

    A. Claim construction ........................................................................ 6

    B. Nomadix does not literally infringe ............................................. 6

    C. Nomadix cannot infringe under the doctrine of equivalents ..................................................................................... 8

V. CONCLUSION ..................................................................................... 10

# TABLE OF AUTHORITIES

**Page No.**

*Asyst Techs., Inc. v. Emtrak, Inc.*,
    402 F.3d 1188 (Fed. Cir. 2005)..................................................................9

*Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001)..................................................................3

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007)..................................................................2

*Cybor Corp. v. FAS Techs.*,
    138 F.3d 1448 (Fed. Cir. 1998) (en banc)..................................................2

*Digital Biometrics v. Identix, Inc.*,
    149 F.3d 1335 (Fed. Cir. 1998)..................................................................2

*General Elec. v. Nintendo Co.*,
    179 F.3d 1350 (Fed. Cir. 1999)..................................................................2

*Johnston v. IVAC Corp.*,
    885 F.2d 1574 (Fed. Cir. 1989)..................................................................2

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999)..................................................................8

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
    324 F.3d 1308 (Fed. Cir. 2003)..................................................................3

*Markman v. Westview Instruments*,
    517 U.S. 370 (1996) ..................................................................................6

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)..................................................................9

*Panduit Corp. v. HellermannTyton Corp.*,
    451 F.3d 819 (Fed. Cir. 2006)....................................................................3

*Planet Bingo, LLC v. GameTech Int'l, Inc.*,
    472 F.3d 1338 (Fed. Cir. 2006)............................................................3, 9

**TABLE OF AUTHORITIES**
(continued)

**Page No.**

*TechSearch, L.L.C. v. Intel Corp.*,
  286 F.3d 1360 (Fed. Cir. 2002) ................................................................. 2

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ........................................................................... 8, 9

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
  418 F.3d 1326 (Fed. Cir. 2005) ................................................................. 2

**OTHER AUTHORITIES**

35 U.S.C. § 112 ................................................................................ 5, 6

Fed. R. Civ. P. 56 ............................................................................... 2

Plaintiff and counterclaim-defendant Nomadix, Inc. seeks summary judgment that the operation of its accused gateways does not infringe iBAHN's U.S. Patent Nos. 6,996,073 ("the '073 patent") and 7,580,376 ("the '376 patent"). Nomadix does not perform the "providing" and "restricting" steps that are required by all claims of the '073 and '376 patents, either literally or under the doctrine of equivalents. This motion is supported by the declarations of Vadim Olshansky and Mark Lezama submitted herewith, along with the supporting exhibits.

## I. INTRODUCTION

The '073 and '376 patents describe methods of providing content or conference services to specific groups of users, such as attendees of a conference. According to these methods, the members of the group are identified with a group identification tag, and this group identification tag is used to restrict access to the group-specific content or conference services to only the members of the group. All of the claims in the '073 and '376 patents require the steps of providing content or conference services on a network, and restricting access to the content or conference services to selected users using the group identification tag.

Nomadix does not perform these "providing" and "restricting" steps. In Nomadix's system, once a user has validly logged in, the user can access the same things on the Internet as any other user who has logged in. Nomadix's gateways do not restrict access to anything on the network based on whether a user is a member of a group. For at least that reason, Nomadix does not literally infringe any of the claims of the '073 and '376 patents. Moreover, the claims of the '073 and '376 patents cannot be read on Nomadix's gateways without vitiating the requirement in every claim of "restricting access . . . to the selected users using the group identification tag"; thus, Nomadix does not infringe these claims under the doctrine of equivalents. Because Nomadix does not infringe

either literally or under the doctrine of equivalents, the Court should grant summary judgment of no infringement of the '073 and '376 patents.[1]

## II. LEGAL STANDARD

Summary judgment is as appropriate in a patent case as it is in any other type of case. Fed. R. Civ. P. 56; *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77 (Fed. Cir. 1989). As the patentee, iBAHN "bears the burden of proving infringement by a preponderance of the evidence." *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1342 (Fed. Cir. 2005). iBAHN must prove that each and every limitation of an asserted claim is present in the accused method. *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378–79 (Fed. Cir. 2007). If even a single claim limitation is missing, there can be no infringement. *Digital Biometrics v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998). Summary judgment of noninfringement is therefore warranted where there is no genuine dispute that the accused method lacks one or more limitations of an asserted claim. *General Elec. v. Nintendo Co.*, 179 F.3d 1350, 1363 (Fed. Cir. 1999).

A noninfringement analysis involves two steps. First, the court determines the scope and meaning of the claims as a matter of law. *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). Second, the court compares the construed claims to the accused device or method. *Id.* at 1454.

Literal infringement requires that each and every element of the claim be present in the accused device or method. *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002). If a claim limitation is not met literally, then the court may evaluate whether there is infringement under the doctrine of

---

[1] Nomadix does not concede that its gateways accused of infringement satisfy any of the limitations of the asserted claims. For the sake of simplicity, and because the issues are dispositive for the '073 and '376 patents, Nomadix focuses only on the "providing" and "restricting" limitations in this motion.

equivalents, which can occur if the accused method includes a step that performs substantially the same function, in substantially the same way, and achieves substantially the same result, as the claim limitation not present literally. *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1344 (Fed. Cir. 2006).

However, "[t]he determination of infringement under the doctrine of equivalents is limited by . . . the 'all elements' rule," the application of which is a question of law. *Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 826 (Fed. Cir. 2006). "Under the all elements rule, there can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003). "Thus, if a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents." *Id.* (quoting *Bell Atl. Network Servs. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1280 (Fed. Cir. 2001)) (alteration in original).

## III. UNDER THE '073 AND '376 PATENTS, A SPECIFIC GROUP OF USERS MUST BE THE ONLY USERS WITH ACCESS TO CERTAIN CONTENT OR CONFERENCE SERVICES

**A. The '073 and '376 patents require providing content or conference services and restricting access to only selected users**

The '073 and '376 patents describe providing content and conference services to specific groups such as, for example, the attendees of a conference at a hotel property. (Ex. 1 ('073 patent) col.14 ll.23–28.)[2] Figure 11 illustrates the

---

[2] The '376 patent is a continuation of the '073 patent, which means that these two patents share a common specification. For brevity, this brief cites only the specification of the '073 patent, but the same subject matter appears in the specification of the '376 patent.

method that the patents teach for providing these group-specific services:



In the first step of this process, a "group identification number or tag is associated with each of the attendees of a specific conference." (*Id.* at col.14 ll.33–34.)  Next, "[c]onference specific services and content are . . . provided on the network." (*Id.* at col.14 ll.38–39.)  The specification describes several examples of conference services or content.  In each of these examples, the content or conference services are made available only to attendees of the conference.  The specification states that "[c]onference services might include, for example, substantially real time voice communication and/or video teleconferencing with other attendees of the conference.  Speakers or conference organizers may have software they want to distribute to attendees electronically.  Only conference attendees have access to such electronic information." (*Id.* at col.14 ll.40–45 (emphasis added).  *See also id.* at col.14 ll.51–54 (describing a chat room that "[o]nly conference members would have access to").)

According to the specification, restricting access so that only conference attendees have access is accomplished by querying whether "the network IP

address associated with a particular guest's computer is associated with the group ID tag." (*Id.* at col.15 ll.13–14.) If the answer is yes, the user of that computer is provided access to the conference specific services and content. If the answer is no, access is blocked. (*Id.* at col.15 ll.13–19.)

**B.     The patent claims all require that access to the content or conference services be restricted to the specific group**

Each of the claims in the '073 and '376 patents requires that access to group-specific content or conference services be restricted to only selected users. Claim 1 of the '073 patent requires "providing the conference services on the network; and restricting access to the conference services to the selected users using the group identification tag." This same language appears in claim 10. Because claims 1 and 10 are the only independent claims in the '073 patent, these steps are incorporated into all of the claims of the '073 patent. 35 U.S.C. § 112, ¶ 4.

In the '376 patent, claim 1 recites:

> **A method for restricting access to content** in a network having a plurality of users associated therewith, comprising:
>
> associating a group identification tag with selected ones of the plurality of users thereby identifying the selected users as members of a specific group;
>
> **providing the content on the network; and**
>
> **restricting access to the content to the selected users using the group identification tag** by verifying that a particular network address from which a request has been received has the group identification tag associated therewith before providing access to the content.

(Ex. 2 ('376 patent) at col.15 ll.35–45 (emphasis added).) Claim 9 also recites "providing the content on the network; and restricting access to the content to

-5-

the selected users using the group identification tag." Likewise, claim 15 recites a network with a computing device programmed to "provide the content on the network; and restrict access to the content to the selected users using the group identification tag." All of the other claims that iBAHN asserts from the '376 patent depend from one of independent claims 1 or 9, and thus include the "providing" and "restricting" limitations as well. 35 U.S.C. § 112, ¶ 4.

## IV. NOMADIX IS ENTITLED TO SUMMARY JUDGMENT OF NONINFRINGEMENT

### A. Claim construction

The first step in a noninfringement analysis is claim construction, which is an issue of law for the Court to decide. *Markman v. Westview Instruments,* 517 U.S. 370, 388, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). In its Claim Construction Order of October 24, 2011, the Court issued the following claim construction rulings for the '073 and '376 patents:

- "network access node" means "the point where user traffic enters and exits a communications network" (Dkt. No. 492 at 12–14);
- "network having a plurality of users associated therewith" does not require construction (*id.* at 17–18); and
- "conference" does not require construction (*id.* at 18–19).

None of the terms in the "providing" or "restricting" limitations of the '073 or '376 patents were construed. Therefore, the plain and ordinary meaning of those limitations governs.

### B. Nomadix does not literally infringe

Nomadix's gateways do not provide any content or conference services to which they restrict access to only a particular group of users. Instead, every user who has logged in can access the same content and conference services as any other user who has logged in with the same Nomadix gateway. (Olshansky Decl. ¶ 9.)

Accordingly, Nomadix does not literally infringe any claim of the '073 and '376 patents because it does not carry out the providing and restricting limitations that are required by each of those claims. In particular, Nomadix's gateways do not satisfy:

- "providing the conference services on the network; and restricting access to the conference services to the selected users using the group identification tag" (all claims of the '073 patent);

- "providing the content on the network; and restricting access to the content to the selected users using the group identification tag" (claims 1–14 of the '376 patent); and

- a network with a computing device programmed to "provide the content on the network; and restrict access to the content to the selected users using the group identification tag" (claim 15 of the '376 patent).

In its infringement contentions, iBAHN contends that a Nomadix group account feature satisfies the claimed "group identification tag." (*E.g.*, Ex. 3 at 13–19; Ex. 4 at 13.) But a group account simply allows more than one user to log in through the same username and password combination. (Olshansky Decl. ¶ 11.) Nomadix gateways do not restrict access to content or conference services such that only users logging in under a particular group account have access to that content or those conference services. (*Id.* at ¶ 12.) Instead, to the extent content and conference services are available to a user who logs in under a group account, the Nomadix gateway will not prevent any other user who has logged in from accessing that content or those conference services, including any user who has logged in using a different username and password than that of the group account. (*Id.*)

iBAHN also makes reference in its infringement contentions to "realm based routing." (*E.g.*, Ex. 3 at 20; Ex. 4 at 20.) This feature allows users of some Nomadix gateways to specify a "realm" along with a traditional username

when logging in.  (Olshansky Decl. ¶ 13.)  For example, when prompted for a username, a user might enter a traditional username plus a realm in the following format: traditionalusername@realm. (*Id.*)

However, Nomadix gateways do not restrict access to content or conference services such that only users specifying a particular realm at login have access to that content or those conference services.  (*Id.* at ¶ 14.)  Instead, to the extent content and conference services are available to a user who logs in using a particular realm, the Nomadix gateway will not prevent any other user who has logged in from accessing that content or those conference services, including any user who logs in without using that realm.  (*Id.*)

iBAHN's infringement contentions do not include any evidence that a Nomadix gateway has ever provided content or conference services that it allowed users logging in with a particular group account or realm to access but that it blocked other users from accessing on the basis that they did not log in with the same group account or realm.  (*See generally* Exs. 3, 4.)  Because iBAHN cannot carry its burden of showing that Nomadix performs the providing and restricting limitations of the '073 and '376 patents, Nomadix is entitled to summary judgment of no literal infringement.

### C. Nomadix cannot infringe under the doctrine of equivalents

iBAHN cannot accuse Nomadix's gateways of infringement under the doctrine of equivalents without entirely vitiating the "restricting" limitations that are required by every claim of the '073 and '376 patents.  The Supreme Court has cautioned that "[i]t is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997); *see also K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed. Cir. 1999) (cautioning that the doctrine of equivalents cannot be used to

-8-

vitiate a claim term in its entirety).  Under the "all elements" rule, each claim term is presumed to be material to the scope of the claim.  *Warner-Jenkinson*, 520 U.S. at 29.

Nomadix gateways do not restrict access to content or conference services to only some users.  (Olshansky Decl. ¶¶ 9–10, 12, 14.)  Rather, if some users have access to content or conference services, then Nomadix gateways do not prevent any other users from accessing the same content or conference services.  (*Id.*)  Allowing all users to access content and conference services is the antithesis of restricting access to content and conference services to only a specific group.  Therefore, as a matter of law, Nomadix does not infringe under the doctrine of equivalents.  *Planet Bingo*, 472 F.3d at 1345 ("This court has refused to apply the doctrine [of equivalents] . . . where the accused device contained the antithesis of the claimed structure."); *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (affirming summary judgment of no infringement under the doctrine of equivalents because "[t]o hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (holding that "majority" is not entitled to a scope of equivalents covering a minority because "it would defy logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise").

There is simply no way that the claims of the '073 and '376 patents can encompass Nomadix's gateways without entirely eliminating the limitation, present in every claim of the '073 and '376 patents, of "restricting access . . . to the selected users using the group identification tag."  Accordingly, the all elements rule bars iBAHN from asserting infringement under the doctrine of equivalents as a matter of law.  *Asyst Techs.*, 402 F.3d at 1195.

# V. CONCLUSION

For these reasons, Nomadix respectfully requests that this Court grant Nomadix's motion for summary judgment of no infringement of the '073 and '376, both literally and under the doctrine of equivalents.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 7, 2011   By: /s/ *Mark Lezama*
John B. Sganga, Jr.
Douglas G. Muehlhauser
Perry D. Oldham
Mark Lezama
Alan G. Laquer

Attorneys for Plaintiff
NOMADIX, INC.

12138310