John B. Sganga, Jr. (SBN 116,211)
john.sganga@kmob.com
Douglas G. Muehlhauser (SBN 179,495)
doug.muehlhauser@kmob.com
Perry D. Oldham (SBN 216,016)
perry.oldham@kmob.com
Mark Lezama (SBN 253,479)
mark.lezama@kmob.com
Alan G. Laquer (SBN 259,257)
alan.laquer@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
NOMADIX, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NOMADIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Civil Action No. CV09-08441 DDP (VBKx) <br><br> **SUPPLEMENTAL DECLARATION OF VADIM OLSHANSKY IN SUPPORT OF NOMADIX, INC.'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 6,996,073 AND 7,580,376** <br><br> Honorable Dean D. Pregerson |

I, Vadim Olshansky, hereby declare as follows:

1.     I have personal knowledge of the matters set forth herein.  If called upon to testify, I could and would testify competently to them.

**A.     Supplemental nature of this declaration**

2.     I submitted a first declaration in support of Nomadix's motion. This declaration supplements that first declaration and responds to the declaration of Robert Printis.

**B.     iBAHN's group account theory**

3.     In my first declaration, I discussed a "group account" feature of certain Nomadix gateways.  (See paragraphs 11–12 of my first declaration.)

4.     I have reviewed iBAHN's opposition brief, including the portion describing its theory of how Nomadix allegedly infringes iBAHN's '073 and '376 patents through the group account feature.   I have also reviewed Dr. Printis' declaration, including the portion discussing group accounts.

**1.     iBAHN does not dispute the single material fact about how Nomadix's gateways operate**

5.     First, I note that neither iBAHN nor Dr. Printis disputes the following statement from paragraph 12 of my first declaration:

[T]o the extent content and conference services are available to a user who logs in under a group account, the Nomadix gateway will not prevent any other user who has logged in from accessing that content or those conference services, including any user who has logged in using a different username and password than that of the group account.

I will refer to this statement as the **Undisputed Statement**.

6.     Rather than take issue with the Undisputed Statement, iBAHN and Dr. Printis attempt to avoid it by confining their infringement theory to a hypothetical situation where a Nomadix gateway is configured with a single

group account and where it is assumed that "only users logged into that group account will be able to access content or services on the network through the Nomadix gateway." (See paragraph 10 of Dr. Printis' declaration.)

7.    This assumption is critical to iBAHN and Dr. Printis' theory because of the Undisputed Statement.  In other words, if a user were to successfully log in without the group account, he would not be prevented by the Nomadix gateway from accessing any content or conference services available to the users logging in under the group account.

## 2.    Dr. Printis' hypothetical example

8.    More specifically, iBAHN and Dr. Printis confine their theory of infringement to a hypothetical situation that is described by Dr. Printis in paragraphs 10 and 11 of his declaration.

### a.    Dr. Printis' premises

9.    Dr. Printis only describes his hypothetical situation in a vague and general way.  The only parameters of this hypothetical situation that Dr. Printis describes are as follows:

(a)    The Nomadix gateway "is configured to have only one group account."   For example, the hypothetical hosts of a "Macworld Expo" conference "can create a group account, called MacworldUsers."  (See paragraphs 10 and 11 of Dr. Printis' declaration.)

(b)    "[N]o other accounts are created for the gateway."  (See paragraph 10 of Dr. Printis' Declaration.)

### b.    Dr. Printis' conclusion

10.    Based on the premises described in subparagraphs 6(a) and 6(b) above, Dr. Printis concludes: "only users logged into that group account will be able to access content or services on the network through the Nomadix gateway." (See paragraph 10 of Dr. Printis' declaration.)

### 3.      Dr. Printis' conclusion does not follow from his premises

11.      The conclusion Dr. Printis draws does not follow from the premises in his hypothetical example.  To illustrate Dr. Printis' error, Nomadix engineers performed a test replicating the conditions of Dr. Printis' hypothetical as follows.

### a.      Setup

12.      A group account was created for a Nomadix AG5600 gateway with username "Macworldusers" as illustrated below:



13.      No other accounts were created for the Nomadix gateway.

14.      Accordingly, the Nomadix gateway was set up according to Dr. Printis' premises.  (See paragraph 6 above.)

15.      The following diagram illustrates the network in which the Nomadix gateway was tested:

Macworldusers user
IP: 10.149.67.13

Google

INTERNET

Nomadix
Gateway

Credit card user
IP: 10.149.67.14

tdutil.nomadix2.com
RADIUS / web server
IP: 67.130.149.70

16.    A first user had IP address 10.149.67.13 and MAC address 00:16:41:E4:8B:1F.

17.    A second user had IP address 10.149.67.14 and MAC address 00:0D:60:60:6C:0E.

18.    Network traffic was recorded in "packet capture" files, excerpts of which are attached to this declaration as Exhibits 1 and 2.  Exhibit 1 includes packets transmitted from and received on the first user's computer.  Exhibit 2 includes packets transmitted from and received on the second user's computer.

/ / /

/ / /

**b.** **Test**

19.    The first user logged in using the Macworldusers group account, as illustrated below:



20.    The first user then accessed the Google website as illustrated below and as recorded in, among others, packet nos. 32–46 of Exhibit 1:



21.    The first user then accessed a webpage on a local web server as illustrated below and as recorded in, among others, packet nos. 60–65 of Exhibit 1:



22.   A second user then logged in using a credit card, as illustrated below:



23.   The second user then accessed the Google website as illustrated below and as recorded in packet nos. 510–523 of Exhibit 2:



24.   The second user then accessed a webpage on a local web server as illustrated below and as recorded in packet nos. 567–574 of Exhibit 2:



### c.   Analysis of testing

25.   In Nomadix's test, a Nomadix gateway was configured with only one account, a group account with username "Macworldusers."  However, a user was able to log in without using that group account and was therefore able to access the same things as any user logging in under the Macworldusers group account.

26.   Nomadix's test thus shows that Dr. Printis' conclusion does not follow from his premises.  In particular, it does not follow that "only users logged into [the] group account will be able to access content or services on the network through the Nomadix gateway."

### 4.   Dr. Printis' hypothetical does not appear in iBAHN's infringement contentions

27.   Dr. Printis' hypothetical situation is not described anywhere in iBAHN's infringement contentions.  Nothing in iBAHN's infringement contentions for the '073 and '376 patents, including none of the source code cited by iBAHN, indicates an assumption that the Nomadix gateway is configured to have only one valid account, which is a group account.  For example, the source code cited by iBAHN does not depend in any way on whether the gateway is configured with several user accounts or with just one account that happens to be a group account.

28.   The only example of a group-account-based infringement theory that iBAHN's infringement contentions provide is fundamentally different from the theory that iBAHN and Dr. Printis discuss in connection with this motion. The following passages (taken from iBAHN's contentions) describe the infringement theory that iBAHN adopted in its infringement contentions:

A group identification tag, group account name, is associated with each user as shown in the Syslog record extracted from the Nomadix Access Gateway. *See* EXHIBIT 8, Syslog History.pdf and EXHIBIT 9, How to Interpret the Subscriber Tracking Syslog messages in version 2008.2.016.pdf. The Group identification tags, "Doors," "Art," and "Conference," are defined via a Configuration page in the AG 3100 Administration Web Interface as shown in EXHIBIT 10, Process a Subscriber.pdf, EXHIBIT 11, Process a Subscriber2.pdf, and EXHIBIT 12, Process a Subscriber3.pdf respectively. EXHIBIT 13, Subscriber Profiles.pdf shows all of the authorized subscribers created in the exemplary network environment.

. . .

In each case, the number of users in each group is restricted to three or less. Group identification tags are used when a user attempts to access content via a web client such as Internet Explorer by logging into the AG 3100 as shown in the following figure. *See also* EXHIBIT 14, Subscriber Login Doors.pdf.

(See, e.g., pages 13–14 of iBAHN's infringement contentions for the '073 patent.)

29. As shown above, the only group-account-based example iBAHN described in its contentions involves **three** group accounts, not one. The three group accounts were named "Doors," "Art" and "Conference." Moreover, as shown above, iBAHN configured each of these group accounts to have a maximum of three users.

30. In an attempt to illustrate that access to content or conference services was restricted in this scenario, iBAHN described (a) how a user logging in with the Doors account was able to access a database that iBAHN called "Doors" and (b) how a user attempting to log in with the Art account was not able to access the "Doors" database (see, e.g., pages 22, 27–28 of iBAHN's infringement contentions for the '073 patent):

In another example, the Nomadix Access Gateway's NSE software provides content on the network to users associated with group account "Doors." The "Doors" user (10.239.12.0) attempts to access a database located on a server (10.239.12.151) within its assigned subnet. As shown in the attached exhibits, the Doors user first requests a license from the server using TCP port 19353. *See* EXHIBIT 15, DoorsWorksLic.pdf. After acquiring the license, the packet trace shows the server (10.239.12.151) providing data to the "Doors" user. *See* EXHIBIT 16, DoorsWorksData.pdf. As shown in EXHIBIT 17, Working Doors.pdf, the "Doors" user has access to the DOORS database located within the subnet assigned to the group.

. . .

Further, the NSE contains software modules for verifying that the group identification tag is assigned to the network address (IP address) using procedures specified by standard Internet protocols. Once the user's group identification tag is verified, the user is granted access to the content. Users with access to internet content are identified by the "AAA state" of "valid." Note the Syslog messages above contains the group identification tag "Art" for those users that can access the network content and packets without a verified tag cannot access the network content. When the number of users using the group identification tag exceeds three (3), a new user attempting to use the group identification tag receives an error message that the maximum number of users has been exceeded as shown in following Figure. *See* EXHIBIT 21, Login Error.pdf. See also, EXHIBIT 22, Packet 11935.pdf, the data field message of packet number 11935 indicates that login in fails once the maximum number of users on a group account is exceeded.

In addition, access is denied to an "Art" user attempting to access the "Doors" database because the Nomadix Access Gateway can restrict access to conference-specific content to selected users associated with a group identification tag. As shown in EXHIBIT 23, DoorsNotWorkingDump.pdf, the "Art" user is unsuccessful in acquiring a license from the Doors database, i.e., conference services.



**We are sorry:**

The maximum number of concurrent users for this account
has been reached.

Try Again
Please contact your Network Administrator in case of
problems.

31.   The problem with the theory that iBAHN presents in its infringement contentions is that the only reason that the Art user cannot access the "Doors" database is that he is the **fourth** user trying to log in with the Art account and therefore is not permitted to log in.[1]  Since iBAHN configured the

---

[1] The network configuration that iBAHN appears to have used for the testing described in its infringement contentions (as indicated in Exhibit 1 to the contentions) is not a network configuration that Nomadix supports. In addition, the exhibits iBAHN refers to in its infringement contentions appear to be inconsistent with one another and with the statements in iBAHN's contentions. Moreover, iBAHN does not provide enough information in its contentions to evaluate the exhibits that show packet captures. Accordingly, there may be additional reasons that a user trying to log in with the Art group account could

1    Art group account to have a maximum of three users, the fourth user attempting
2    to log in with the Art account is unsuccessful in logging in.  Thus, contrary to
3    what iBAHN tried to show in its contentions, the would-be fourth Art user's
4    inability to access the "Doors" database does **not** result from the Nomadix
5    gateway only allowing Doors users to access the "Doors" database and blocking
6    all other users.  Indeed, assuming that the gateway allowed a Doors group
7    account user to access the "Doors" database, the gateway would not have
8    prevented the first three Art users from accessing the "Doors" database.[2]  That
9    fact is captured in the Undisputed Statement.

10    32.    Thus, iBAHN's infringement contentions fail to show that the
11    Nomadix gateway allowed only the Doors group account users to access the
12    "Doors" database and blocked all other users from accessing the "Doors"
13    database.

14    **C.  iBAHN's realm-based routing theory**

15    33.    I have reviewed iBAHN's opposition brief, including the portion
16    describing its theory of how Nomadix infringes iBAHN's '073 and '376 patents
17    through the group account feature discussed in my first declaration.  I have also
18    reviewed Dr. Printis' declaration, including the portion discussing "realm-based
19    routing."

20    34.    The realm-based routing feature, when enabled, allows a user to
21    specify a "realm" as part of his username when logging in.   For example, when
22    prompted for a username, a user might enter a traditional username plus a realm
23    in the following format:  traditionalusername@realm.  If the gateway is suitably
24    configured, the gateway may then consult a third-party authentication server

25

26    not access the "Doors" database, such as the improper network configuration;
27    however, any such additional reasons would not be based on which group account the user was using.

28    [2] See previous footnote.

1   (not part of Nomadix's gateway) having some relationship with the realm to

2   verify that the user has submitted a valid username-and-password combination.

### 1.   Dr. Printis does not understand the realm routing feature

4   35.   Quite simply, Dr. Printis fundamentally misunderstands how the

realm-based routing feature of Nomadix's gateways works.  As explained in my

first declaration, Nomadix gateways do not restrict access to content or

conference services such that only users specifying a particular realm at login

have access to that content or those conference services.  Instead, to the extent

content and conference services are available to a user who logs in using a

particular realm, the Nomadix gateway will not prevent any other user who has

logged in from accessing that content or those conference services, including

any user who logs in without using that realm.

### 2.   Dr. Printis' hypothetical example

36.   Dr. Printis attempts to illustrate iBAHN's infringement theory with

a hypothetical situation.

#### a.   Dr. Printis' premise

37.   Dr. Printis' hypothetical relies on the following premise:   a

Nomadix gateway is setup to handle users from a "group.google.com" realm.

(See paragraph 15 of Dr. Printis' declaration.)

#### b.   Dr. Printis' conclusions

38.   Dr. Printis asserts that the following would be true in his

hypothetical:

(a)   A first user logging in with "user@group.google.com"
would be able to access "group.google.com content and
services." (See paragraph 15 of Dr. Printis' declaration.)

(b)   A second user who does not log in under the
group.google.com realm (such as a user logging in with
"otheruser@msn.com")  would be prevented by the Nomadix

-11-

gateway from accessing "the content and servers of the group.google.com server."  (See paragraph 15 of Dr. Printis' declaration.)

### 3.    Dr. Printis' second conclusion does not follow from his premise

39.    Even assuming that the Nomadix gateway could be configured to handle a group.google.com realm, Dr. Printis is simply incorrect in concluding that a user who does not log in under that realm (e.g., a user from a msn.com realm) would be blocked by the Nomadix gateway from accessing content and conference services provided by a server on group.google.com.  In other words, Dr. Printis' second conclusion (paragraph 39(b) above) is incorrect.

40.    To demonstrate Dr. Printis' error, Nomadix engineers conducted a test to replicate the conditions of Dr. Printis' hypothetical.  However, to my knowledge, a Nomadix gateway has never been used with the realm that Dr. Printis used in his hypothetical, group.google.com.  In particular, based on information currently available to Nomadix, there is no way for Nomadix to confirm that there is an authentication server associated with group.google.com that would accept authentication requests from a Nomadix gateway.  The same is true of the msn.com realm Dr. Printis alludes to in his hypothetical.

41.    Accordingly, Nomadix replicated the conditions of Dr. Printis' hypothetical by substituting different names for the realms so that it could use realms that would respond to the authentication requests.  Nomadix used tdutil.nomadix2.com instead of group.google.com, and fishnet1.nomadix2.com instead of msn.com.

### a.    Setup

42.    A Nomadix AG5600 gateway was configured with an authentication profile for contacting an authentication server at tdutil.nomadix2.com.  The gateway was further configured with a realm routing policy specifying that the tdutil.nomadix2.com authentication server should be

used to authenticate users from the tdutil.nomadix2.com realm, as illustrated below:



43.   The gateway was also configured with an authentication profile for contacting an authentication server at fishnet1.nomadix2.com.   The gateway was further configured with a realm routing policy specifying that the fishnet1.nomadix2.com authentication server should be used to authenticate users from the fishnet1.nomadix2.com realm, as illustrated below:



44.     The following diagram illustrates the network in which the Nomadix gateway was tested:



45.     A first user had IP address 10.149.67.13 and MAC address 00:16:41:E4:8B:1F.

46.     A second user had IP address 10.149.67.14 and MAC address 00:0D:60:60:6C:0E.

47.     A third user had IP address 10.149.67.15 and MAC address 70:5A:B6:A0:D4:6A.

48.     Network traffic was recorded in packet capture files, excerpts of which are attached to this declaration as Exhibits 3 and 4.  Exhibit 3 includes packets transmitted from and received on the second user's computer.  Exhibit 4 includes packets transmitted from and received on the third user's computer.

///

///

### b.     Test

49.    The first user logged in by entering "user@tdutil.nomadix2.com" and a valid password for that username and realm, as illustrated below:



50.    After logging in, the first user successfully accessed a webpage on a tdutil.nomadix2.com server, as illustrated below:



/ / /

/ / /

51.   The second user successfully logged in by entering "otheruser@fishnet1.nomadix2.com" and a valid password for that username and realm, as illustrated below:



52.   The second user then successfully accessed the same webpage on the tdutil.nomadix2.com server that the first user accessed, as illustrated below and as recorded in packet nos. 98–103 of Exhibit 3:

/ / /

/ / /

53.     The third user successfully logged in by entering a username of "thirduser" and a valid password for that username.  The third user thus logged in without specifying a realm, as illustrated below:



54.     The third user then successfully accessed the same webpage on the tdutil.nomadix2.com server that the first and second users accessed, as illustrated below and as recorded in packet nos. 31–36 of Exhibit 4:

###### c.    Analysis

55.    In Nomadix's test, the second and third users were able to access the same tdutil.nomadix2.com server despite not logging in under the tdutil.nomadix2.com realm.  In particular, the second user logged in under the fishnet1.nomadix2.com realm.  The third user did not log in under any realm at all.  The Nomadix gateway did not block the second and third users from accessing anything from the tdutil.nomadix2.com realm that the first user was allowed to access.

56.    The test therefore demonstrates that Dr. Printis' hypothetical example simply does not correspond to reality.  In particular, the test shows that Dr. Printis' second conclusion (stated in paragraph 39(b) above) is wrong.

#### 4.    Dr. Printis misunderstands Exhibit B of Mr. Ong's declaration

57.    I have reviewed the document attached as Exhibit B to the declaration of Andrew Ong.  In particular, I have reviewed the page marked NMDX0238764 and its discussion of realm-based routing.

58.    Dr. Printis misunderstands that discussion of realm-based routing. Dr. Printis states:

> I understand the description of Realm Based Routing [in Exhibit B] to mean that if the user ID does not contain the realm name . . . , then the Nomadix gateway will not use the specified profile to obtain the content or service associated with that realm.  In this way, the Nomadix gateway can restrict users outside of the realm from obtaining content or services on the network.

(Paragraph 16 of Dr. Printis' declaration.)

59.    It is unclear what Dr. Printis is referring to when he mentions "the specified profile."  Exhibit B describes that the gateway is configured to use a specific authentication profile for users from a particular realm.  It appears that Dr. Printis is thus referring to the profile specified for a particular realm.

60.     In asserting that, "[i]n this way, the Nomadix gateway can restrict users outside of the realm from obtaining content or services on the network," Dr. Printis draws an unwarranted, and incorrect, conclusion.

61.     Even if, as Dr. Printis appears to assume, the gateway is configured to use a particular authentication profile for only one realm, that does not mean that the gateway prevents "users outside of the realm from obtaining content or services on the network," as Dr. Printis suggests.  To the contrary, the gateway does **not** prevent users "outside" of a realm from obtaining any content or services available to users "inside" the realm.  This was demonstrated by the test described above:   although the gateway was configured to use a different authentication profile for the tdutil.nomadix2.com realm than the authentication profile it was configured to use for the fishnet1.nomadix2.com realm, that did not prevent the second and third users (who were "outside" the tdutil.nomadix2.com realm) from accessing the same tdutil.nomadix2.com webpage that was accessed by the first user (who was "inside" the tdutil.nomadix2.com realm).

62.     Exhibit B of Mr. Ong's declaration does not describe anything to the contrary.  In particular, nothing in Exhibit B describes that a Nomadix gateway prevents users "outside" a realm from accessing content or conference services available to users "inside" the realm.

/ / /

/ / /

-19-

**D.     Conclusion**

63.    In summary, Nomadix's gateways do not restrict access to content or conference services to only users using a particular group account or realm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 20, 2011, in Haleiwa, Hawaii.

_____

Vadim Olshansky

12299366

-20-