O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOMADIX, INC., | Case No. CV 09-08441 DDP (VBKx) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 6,996,073 AND 7,580,376** |
| v. | |
| HEWLETT-PACKARD COMPANY, a Delaware corporation; WAYPORT, INC., a Delaware corporation; IBAHN CORPORATION, a Delaware corporation; GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., a Canadian corporation; GUEST-TEK INTERACTIVE ENTERTAINMENT, INC.; a California corporation; LODGENET INTERACTIVE CORPORATION, a Delaware corporation; LODGENET STAYONLINE, INC., a Delaware corporation; ARUBA NETWORKS, INC.; a Delaware corporation; SUPERCLICK, INC., A Washington corporation; SUPERCLICK NETWORKS, INC., a Canadian corporation, | [Docket No. 566] |
| Defendants. | |

Presently before the court is Plaintiff Nomadix, Inc.'s Motion for Summary Judgment of Noninfringement of U.S. Patent Nos. 6,996,073 and 7,580,376 ("Motion").  Having reviewed the parties' moving papers and heard oral argument, the court grants the Motion and adopts the following Order.

## I.   BACKGROUND

As Counterclaim-Defendant, Nomadix, Inc. ("Nomadix") seeks summary judgment that the operation of its accused gateways do not infringe U.S. Patent Nos. 6,996,073 ("'073 Patent") and 7,580,376 ("'376 Patent") (collectively, "Patents"), held by Counterclaim-Plaintiffs iBAHN Corporation and iBAHN General Holdings Corporation (collectively, "iBAHN").  Nomadix argues that it is entitled to summary judgment of noninfringement because its gateways do not "provid[e] content or conference services on a network, and restrict[] access to the content or conference services to selected users" ("providing" and "restricting" limitations, respectively). (Mot. at 1.)  There is no dispute that these steps are required by all claims of the two Patents at issue.[1]  iBAHN contends that the Motion should be denied, however, because Nomadix's gateways do meet these providing and restricting limitations.  At the least, iBAHN argues, Nomadix has failed to show that there is no genuine issue of material fact.  (Opp'n at 2; Sur-Reply at 1.[2])

---

[1]   Because the court declined to construe any of the relevant terms, their ordinary meaning applies.  See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("[T]he words of a claim are generally given their ordinary and customary meaning." (internal quotation marks omitted)).

[2]   On November 28, 2011, iBAHN filed an Ex Parte Application for Leave to File a Sur-Reply in Opposition to Nomadix's Motion. The court took the Application under submission.  Having reviewed
(continued...)

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> The evidence must be viewed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. <u>Id.</u> at 255.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). However, "[o]n an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" <u>Regents of Univ. of Cal. v. Dako N. Am., Inc.</u>, No. C 05-03955, 2009 WL 1083446, at *5 (N.D. Cal. Apr. 22, 2009) (quoting <u>Celotex</u>, 477 U.S. at 325).

Once the moving party meets this initial burden, "the nonmoving party must go beyond the pleadings and, by its own

---

[2](...continued)
the parties' moving papers, the court is not convinced that Nomadix raised any new arguments in its Reply, as iBAHN contends. Nonetheless, in the interest of having a complete record, the court will consider iBAHN's Sur-Reply.

3

affidavits or discovery, 'set forth specific facts showing that there is a genuine issue for trial.'" Regents, 2009 WL 1083446, at *5 (quoting Fed. R. Civ. P. 56(e)). It is not enough for the nonmoving party to rest on the "mere allegations or denials of his pleadings." Anderson, 477 U.S. at 259; see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.").

**III. DISCUSSION**

In this patent case, iBAHN "bears the burden of proving infringement by a preponderance of the evidence." Warner-Lambert Co. v. Teva Pharm. USA, Inc., 418 F.3d 1326, 1342 (Fed. Cir. 2005). "Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378 (Fed. Cir. 2007). "An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied." Digital Biometrics v. Identix, Inc., 149 F.3d 1335, 1349 (Fed. Cir. 1998).

In its Motion, Nomadix has pointed to an absence of evidence in support of the providing and restricting limitations of iBAHN's asserted claims. Nomadix has therefore met its initial summary judgment burden. In response, iBAHN cites to the following materials: 1) Dr. Robert Printis' Declaration in Support of iBAHN's Opposition ("Printis Declaration"); 2) Dr. Printis' Supplemental Declaration in Support of iBAHN's Opposition ("Supplemental Printis Declaration"); 3) iBAHN's Second Amended Infringement Contentions ("Contentions"); and 4) a document titled "Nomadix, Inc. Network Service Engine (NSE) Architecture and Module" ("Nomadix Product Document").

4

The court finds, however, that none of these materials are sufficient to create a genuine issue of material fact as to the restricting limitation in iBAHN's claims. Nomadix is therefore entitled to summary judgment of noninfringement on the Patents.

### A.   Printis Declarations

In his Declaration, Dr. Printis states that he understands the Patents and has reviewed the relevant source code. (Printis Decl. ¶¶ 5-6.) He also states that he is familiar with Nomadix's Group Account and Realm Based Routing features, and has run tests to verify their operation. (Id. ¶¶ 8, 12.) He then states, without any analysis, that he disagrees with Nomadix's claim that these features do not restrict access to content or conference services ("content/services") to particular users, because they can in fact be configured to do so. (Id. ¶¶ 9-10, 13-14.)

Dr. Printis then briefly describes two hypothetical scenarios ostensibly confirming this contention. First, with regard to Nomadix's Group Account feature, Dr. Printis describes a hypothetical "Macworld Expo" conference. He states that the conference hosts could create a "MacworldUsers" group account, and that only this group would have access to the content/services provided by Nomadix. (Id. ¶ 11.) Second, as to Realm Based Routing, Dr. Printis describes a hypothetical involving a "group.google.com" realm name. He states that a user named "user@group.google.com" would be able to access content/services on a "group.google.com" server, while a user named "otheruser@msn.com" would be restricted from accessing the server. (Id. ¶ 15.) Finally, Dr. Printis states that he has reviewed the Nomadix

5

Product Document, and understands it to mean that access can be restricted through Realm Based Routing. (Id. ¶ 16.)

The court finds that Dr. Printis' Declaration is too conclusory to create a genuine issue of material fact as to the restricting limitation. To avoid summary judgment, a patentee must provide "[e]vidence from which a reasonable fact-finder could find infringement." Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1050-51 (Fed. Cir. 2001). However, a patentee "does not meet this evidentiary threshold merely by submitting the affidavit of an expert who opines that the accused device meets the claim limitations." Id. at 1051. Rather, the "expert must set forth the factual foundation" for his or her opinion "in sufficient detail for the court to determine whether that factual foundation would support a finding of noninfringement." Id. (internal quotation marks omitted).

Here, prior to opining that Nomadix's Group Account and Realm Based Routing features meet the restricting limitation, Dr. Printis simply states that he has reviewed the relevant source code and run tests. Dr. Printis does not provide even a brief explanation of how the source code functions, or any description of the tests he performed. Nor does Dr. Printis cite to any specific product configurations or tests confirming his hypotheticals.

Indeed, the conclusory nature of Dr. Printis' hypotheticals is made clear by Vadim Olshansky's Supplemental Declaration in Support of Nomadix's Motion ("Olshansky Declaration"). In his Declaration, Olshansky describes in detail product configurations and tests, allegedly complying fully with Dr. Printis' hypotheticals, where

6

content/service access is <u>not</u> restricted to selected users. (Olshansky Decl. ¶¶ 11-26, 39-56.)  In its Sur-Reply, iBAHN makes the accurate theoretical point that: just "because [Nomadix's] gateways <u>can</u> be configured such that [the features] do[] not restrict access to certain users," does not mean that <u>no</u> configuration restricts access. (Sur-Reply at 2.)  iBAHN also argues that Nomadix excluded an important part of the Realm Based Routing configuration from its tests.  iBAHN, however, never moves beyond these theoretical and practical objections to Nomadix's detailed configurations and tests, to describe with any specificity a configuration or test that <u>would</u> satisfy the claims limitation. Instead, in his one-page Supplemental Declaration, Dr. Printis again makes only conclusory allegations.[3]  Thus, the court is left with nothing more than two undetailed hypotheticals that - at least in their generalized form - are indisputably incorrect.[4]

---

[3] In relevant part, Dr. Printis states that:  "Nomadix's test ignores that its gateways have the option to associate a realm routing policy with a RADIUS profile or a tunneling profile.  A RADIUS profile or a tunneling profile requires that a user be authorized in order to have access to the content or services with which the profile is associated.  Thus, through a realm routing policy and its associated RADIUS or tunneling profile, a Nomadix gateway restricts access to content or services to only members of a particular realm."  (<u>Id.</u> ¶¶ 3-4.)  Notably, Dr. Printis does not describe any particular "RADIUS or tunneling profile" that would restrict access, or discuss any confirming tests.

[4] Although the court need not reach the issue, Nomadix also argues persuasively that Dr. Printis' Group Account hypothetical would not satisfy the restricting limitation, even if it were true. Specifically, Dr. Printis' hypothetical involves configuring a Nomadix gateway "to have only one group account . . . and no other accounts."  (Printis Decl. ¶¶ 11-12.)  Thus, access is only restricted to the group account users because there are no other users.  But as iBAHN concedes, the Patents "require that access be restricted to . . . a <u>subset</u> of users" (Sur-Reply at 4 (emphasis added) - specifically, a subset of the "plurality of users
(continued...)

**B.   Infringement Contentions**

iBAHN also argues that its Infringement Contentions create a genuine issue as to the restricting limitation, because the Contentions cite to Nomadix technical documents and source code confirming that its products restrict access to selected users. The Contentions, however, are not themselves evidence; they are written by attorneys, and not based on personal knowledge or signed under penalty of perjury. See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC, No. 1:CV-09-1685, 2010 WL 4537002, at *2 (M.D. Pa. 2010) ("[I]nfringement contentions provide notice of the accusing party's specific infringement theories, and are not considered evidence."). Nor are the alleged technical documents and source code cited therein authenticated in the usual manner. See Corkill v. Preferred Employers Group, LLC, No. 11cv505, 2011 WL 5975678, at *4 (S.D. Cal. 2011) ("Generally, on a motion for summary judgment, a document is authenticated through personal knowledge by attaching it to an affidavit, where the affiant is a competent witness who wrote the document, signed it, used it, or saw others do so.").

---

[4](...continued)
associated []with" the network. ('073 Patent at 15:55-65;'376 Patent at 15:35-45.) iBAHN argues, however, that the court refused to construe this limitation as requiring that the broader set of users "have been granted access to the network." (Claim Constr. Order at 17-18.) But in rejecting Nomadix's proposed construction, the court simply left the limitation with its ordinary meaning. At a minimum, restricting access to selected users from "a plurality of users associated []with" the network must mean that there are multiple user accounts on the network. As Nomadix reasonably argues, iBAHN's Patents would otherwise likely "sweep in a large category of new prior art," by covering "a simple network that supports only one username and password to be used by all users, and that denies access to anyone who does not use that username and password." (Reply at 13.)

There are, of course, other ways to authenticate evidence. For instance, under Federal Rule of Evidence 901(b)(4), an item can be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristics." <u>See also</u> <u>Corkill</u>, 2011 WL 5975678, at *4 (discussing this method of authentication). Here, however, iBAHN cites broadly to its Contentions, without asking the court to authenticate specific supporting documents, or suggesting any basis for doing so. (<u>See, e.g.</u>, Opp'n at 5 (alleging that "iBAHN has provided in its [Contentions] citations to Nomadix documents and source code that show the Nomadix accused products do in fact 'restrict access'"); Sur-Reply at 2 ("In its [Contentions], iBAHN cited to actual tests run on a Nomadix gateway, Nomadix's own documentation, as well as Nomadix's source code as evidence . . . .").) The court will not scour through the exhibits to the Contentions to determine whether any might be properly authenticated and create a genuine issue of material fact. <u>See</u> <u>Green v. Seattle Art Museum</u>, No. C07-0058, 2008 WL 2180144, at *2 (W.D. Wash. 2008) ("The district court is not obligated to search the record for material facts . . . .").

**C.  Nomadix Product Document**

Finally, iBAHN cites to one specific Nomadix Product Document, which states that: 1) "Realm-Based Routing is a feature that supports roaming NSE subscribers, by allowing them to obtain certain types of services from servers in their 'home' network, i.e., from within the subscriber's realm"; and 2) realm routing policies "basically have the meaning 'If the realm name contained within a user id matches the criteria in this policy, then use the

specified profile in deciding where to obtain the service.'"
(Nomadix Prod. Doc. at NMDX0238764.)  Contrary to iBAHN's argument,
without any admissible interpretation of these statements, it would
not be reasonable to conclude that deciding "where" to obtain a
service is the same as "restricting access" to that service.

**IV.  CONCLUSION**

In sum, iBAHN provides no evidence sufficient to establish a
genuine issue of material fact as to whether Nomadix's products
satisfy the restricting limitation of iBAHN's Patents.  Nor does
iBAHN make any argument that Nomadix's products somehow satisfy
this claims limitation through the doctrine of equivalents.  For
all these reasons, the court grants Nomadix's Motion for Summary
Judgment of Noninfringement as to the '073 and '376 Patents.

IT IS SO ORDERED.


Dated: January 17, 2012
                                        DEAN D. PREGERSON
                                        United States District Judge

10