O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NOMADIX, INC., | ) | Case No. CV 09-08441 DDP (VBKx) |
| Plaintiff, | ) ) | **ORDER GRANTING PLAINTIFF'S MOTION** |
| v. | ) ) | **TO DISMISS AND DENYING PROPOSED INTERVENOR'S MOTION TO SUBSTITUTE** |
| HEWLETT-PACKARD COMPANY, a Delaware corporation; WAYPORT, INC., a Delaware corporation; IBAHN CORPORATION, a Delaware corporation; GUEST-TEK INTERACTIVE ENTERTAINMENT LTD., a Canadian corporation; GUEST-TEK INTERACTIVE ENTERTAINMENT, INC.; a California corporation; LODGENET INTERACTIVE CORPORATION, a Delaware corporation; LODGENET STAYONLINE, INC., a Delaware corporation; ARUBA NETWORKS, INC.; a Delaware corporation; SUPERCLICK, INC., A Washington corporation; SUPERCLICK NETWORKS, INC., a Canadian corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | [Dkt. Nos. 1413, 1417] |
| Defendants. | ) ) | |

Presently before the Court are (1) Plaintiff Nomadix, Inc.'s Motion for Involuntary Dismissal of Claims of the iBahn Parties;

and (2) Proposed Intervenor Guest-Tek Interactive Entertainment Ltd.'s Motion to Substitute as a Party Pursuant to Federal Rule of Civil Procedure 25(c).  (Dkt. Nos. 1413, 1417, respectively.) After considering the parties' submissions and hearing oral argument, the Court adopts the following Order.

**I.   BACKGROUND**

These motions arise in a patent infringement case that has been dormant since September 6, 2013, when remaining Defendants-Counterclaimants-Intervenors iBahn General Holdings Corp. and iBahn Corp. ("iBahn") filed notice of bankruptcy proceedings.  (Dkt. No. 1395.)  On September 18, 2013, the Court vacated the pending hearing dates in the counterclaim suit between iBahn and Plaintiff-Counterdefendant Nomadix, Inc. ("Nomadix").  (Dkt. No. 1404.)  On March 29, 2014, after no further activity in the case, the Court removed the case from the Court's active caseload absent further application by the parties or Order of the Court.  (Dkt. No. 1405.)

On May 19, 2015, Nomadix filed an application to return the case to the Court's active caseload.  (Dkt. No. 1407.)  Nomadix explained that the Bankruptcy Court had dismissed iBahn's bankruptcy case on February 3, 2015.  (Id.)  Thus, Nomadix sought to return the case to the Court's active calendar "so that the case can be prepared for a final disposition."  (Id.) The Court granted Nomadix's application to reopen the case on June 30, 2015.  (Dkt. No. 1411.)

No further actions were taken in the case until November 16, 2015, when counsel for the iBahn Defendants filed an unopposed motion to withdraw as attorney because the iBahn Defendants ceased to exist as corporate entities, leaving the counsel without a

2

1    client to represent.  (Dkt. No. 1412.)  The Court granted counsel's

2    motion to withdraw at a hearing on December 17, 2015.  (Dkt. No.

3    1434.)

4        On November 17, 2015, the day after iBahn's counsel filed its

5    motion to withdraw, Nomadix filed the instant Motion for

6    Involuntary Dismissal of Claims of the iBahn parties.  (Dkt. No.

7    1413.)  On November 25, 2015, Guest-Tek made its first filing in

8    the case, the instant Motion for Substitution.  (Dkt. No. 1417.)

9        Nomadix argues the case should be dismissed because iBahn

10   failed to prosecute its claims, which it could have done even

11   during the pendency of its bankruptcy.  (Mot. Dismiss at 3-4.)

12   Thus, Nomadix argues that the claims have failed to be litigated by

13   iBahn — or any successor in interest — since September 2013.  (Id.

14   at 4.)

15       Guest-Tek claims that the action should not be dismissed

16   because Guest-Tek has purchased the underlying patents in dispute

17   as well as iBahn's claims against Nomadix in the iBahn bankruptcy,

18   and so Guest-Tek can now prosecute the claims.  (Opp'n to Mot.

19   Dismiss at 7-8; see also Mot. Substitute.)

20   **II.  LEGAL STANDARD**

21       **A.   Involuntary Dismissal Standard**

22       Federal Rule of Civil Procedure 41(b) allows for a defendant

23   to move to dismiss the action involuntarily based on a plaintiff's

24   failure to prosecute or comply with local rules or a court order.

25   Under Ninth Circuit precedent, a district court may also dismiss a

26   case sua sponte based on a plaintiff's failure to prosecute a case.

27   See Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)

28   (affirming a dismissal for lack of prosecution).  The court weighs

                                    3

five factors to determine if involuntary dismissal is appropriate: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id.

### B. Substitution of Party Standard

Federal Rule of Civil Procedure 25(c) allows for substitution of parties when there is a transfer of interest: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  The decision to allow such substitution is discretionary for the district court. See, e.g., In re Bernal, 207 F.3d 595, 598 (9th Cir. 2000); Dodd v. Pioche Mines Consol., Inc., 308 F.2d 673, 674 (9th Cir. 1962) (per curiam).

### III. DISCUSSION

The Court considers the two motions together, as the factors relevant to determining whether to involuntarily dismiss the case also inform whether the Court should, in its discretion, grant the motion to substitute.

Nomadix argues that the Court should not allow substitution because the same facts that satisfy the five factors that Nomadix alleged against iBahn for the appropriateness of dismissal would continue to apply to dismissal against Guest-Tek. (Opp'n to Mot. Substitute at 4-5.)  Further, Nomadix argues that the substitution would not "remove any limitations that the license agreement

1  between Nomadix and Guest-Tek places on Guest-Tek's ability to

2  pursue [iBahn's] claim." (Id. at 5.)

3      Guest-Tek argues that the license agreement between it and

4  Nomadix does not prevent Guest-Tek from pursuing iBahn's claim,

5  stating, "Guest-Tek does not interpret this portion of the

6  Agreement as preventing it from collecting amounts this Court

7  determines Nomadix would owe to the IBAHN Debtors as a result of

8  Nomadix infringing on the IBAHN Debtor's patents." (Mot.

9  Substitute at 7-8.) Guest-Tek also produced evidence of its

10 purchase of the iBahn patents and claims based on those patents.

11 (See Reply ISO Substitution at 4-5, exs. B, C, E.) Lastly, Guest-

12 Tek argues that there has been no delay in prosecution because of

13 the bankruptcy proceedings and a merger negotiation between Guest-

14 Tek and a parent company to Nomadix. (Id. at 9-11.)

15     The Court notes that Guest-Tek has proffered evidence of

16 its ownership of the iBahn patents and iBahn's cause of action

17 against Nomadix. (Reply ISO Substitution at Exs. B, C, E.) The

18 Court acknowledges Nomadix disputes the sufficiency of the evidence

19 Guest-Tek provided, but Guest-Tek has made a facial showing of

20 ownership of iBahn's patents and other assets. Thus, it is within

21 the Court's discretion to allow Guest-Tek to substitute into the

22 iBahn counterclaims because Guest-Tek is the successor in interest

23 to iBahn. However, the considerations under Nomadix's involuntary

24 dismissal motion color the Court's exercise of that discretion as

25 it would be futile to allow Guest-Tek to substitute into a case

26 that is dismissed. Therefore, the Court takes each of the five

27 involuntary dismissal factors in turn.

28 ///

### 1. Public's Interest

"[T]he public's interest in expeditious resolution of litigation always favors dismissal. <u>Yourish v. Cal. Amplifier</u>, 191 F.3d 983, 990 (9th Cir. 1999) (upholding dismissal of case where plaintiff failed to file amended complaint in the sixty days the court's minute order allotted). In <u>Paqtalunan v. Galaza</u>, the Ninth Circuit found a failure to prosecute for four months weighed in favor of dismissal. 291 F.3d 639, 642 (9th Cir. 2002).

Here, the question of delay is disputed. Nomadix would have the Court find a failure to prosecute for over two years, since September 6, 2013, when the iBahn Defendants' bankruptcy proceedings began. (Mot. Dismiss at 4.) Nomadix claims that iBahn, or any successor in interest, could have continued to litigate iBahn's counterclaims during bankruptcy; the only claims that were required to be automatically stayed were Nomadix's claims against iBahn. (<u>Id.</u> at 3-4.) Further, Nomadix argues that Guest-Tek unnecessarily and unreasonably delayed entering and prosecuting the action. (Reply ISO Dismissal at 5.) Guest-Tek waited until Nomadix sought dismissal of the case before it filed a substitution motion even though Guest-Tek had owned iBahn's interest since March 21, 2014. (<u>Id.</u>)

Guest-Tek argues that prior to the bankruptcy, the case had been "consistently prosecuted" and that the Court's Order vacating the dates and removing the case from the active docket meant that "the parties were unable to take any action in the case from March 2014 until this case was reopened in June 2015." (Opp'n to Dismissal at 8.) Guest-Tek argues that now that the case is reopened, it has filed a motion to substitute, which it claimed at

1  oral argument it began preparing before Nomadix filed its Motion to

2  Dismiss.  (Id.)  Further, Guest-Tex argues it was in merger

3  negotiations with Docomo interTouch, which Guest-Tek believes is

4  the parent company of Nomadix, from April 2014 through September

5  2015.  (Id. at 5.)  Thus, Guest-Tek argues, reopening and

6  prosecuting the case during such sensitive negotiations "could have

7  jeopardized the discussions."  (Id. at 11.)

8      The Ninth Circuit's Bankruptcy Appellate Panel has made clear

9  that an automatic stay in a bankruptcy case is meant to protect the

10  debtor from creditors, but the automatic stay does not apply in the

11  same way to "offensive actions by a debtor or bankruptcy trustee,

12  as the same policy considerations do not exist where the debtor has

13  initiated a prepetition lawsuit against a creditor." In re Way,

14  229 B.R. 11, 13 (B.A.P. 9th Cir. 1998).  Instead, such an offensive

15  action by the debtor can continue despite the bankruptcy.  Id.

16      The Court finds that this factor favors dismissal.  The

17  public's interest is always in expeditious litigation, and that is

18  not the situation here.  Instead, it appears that iBahn and its

19  successor Guest-Tek have unreasonably and unnecessarily delayed

20  prosecution for, respectively, voluntary bankruptcy proceedings and

21  commercial gain in a potential merger.  For iBahn, nothing

22  prevented continued litigation of the counterclaims during its

23  bankruptcy.  However, the Court does not hold iBahn's delay against

24  Guest-Tek as proposed substitute intervenor.

25      But Guest-Tek could have reopened the case and sought

26  substitution after the bankruptcy case ended.  Nomadix had

27  aggressively prosecuted the case throughout its pendency, and at

28  the dismissal of the bankruptcy case, Nomadix was the party to seek

1   to re-open the case.  Yet even after that point, Guest-Tek did not
2   seek intervention or a way to preserve its rights.  Instead, Guest-
3   Tek claims that it did not want to jeopardize its negotiation
4   position in a potential merger.  In short, the Court is doubtful
5   that a simple tolling agreement would have jeopardized any
6   negotiations.  Commercial advantage in a potential merger is not a
7   valid reason to delay prosecuting a case for several months,
8   particularly without notice to the Court or a stipulation between
9   the parties as to the status of the case.  Therefore, the Court
10  finds that this factor favors dismissal.

11          **2.   Court Management of Docket**

12      "The trial judge is in the best position to determine whether
13  the delay in a particular case interferes with docket management
14  and the public interest." Paqtalunan, 291 F.3d at 642.

15      As this factor is often considered in conjunction with the
16  first factor, the Court finds that the same considerations of delay
17  that are detrimental to the public's interest are detrimental to
18  the Court's management of the docket.  By leaving the case closed
19  and unresolved, and not reopening the case upon the end of
20  bankruptcy, iBahn and Guest-Tek have demonstrated reduced regard
21  for the Court's case management.  Therefore, the Court finds this
22  factor also weighs in favor of dismissal.

23          **3.   Prejudice to Other Party**

24      "To prove prejudice, a defendant must establish that
25  plaintiff's actions impaired defendant's ability to proceed to
26  trial." Paqtalunan, 291 F.3d at 642.  "Whether prejudice is
27  sufficient to support an order of dismissal is in part judged with
28  reference to the strength of the plaintiff's excuse for the

1  default." <u>Malone v. U.S. Postal Serv.</u>, 833 F.2d 128, 131 (9th Cir.
2  1987).

3      Here, Nomadix has claimed prejudice because iBahn's
4  counterclaims had a pending motion for summary judgment, and trial
5  scheduled shortly thereafter, right before iBahn filed its
6  bankruptcy proceeding and stopped litigating the case. (Mot.
7  Dismiss at 5.) This failure to continue prosecuting the
8  counterclaims resulted in an unreasonable delay that created a
9  presumption of prejudice, according to Nomadix. (<u>Id.</u>) Further,
10 Nomadix argues that actual prejudice is present because Nomadix had
11 been ready to go to trial and prosecute a last summary judgment
12 motion prior to iBahn's bankruptcy proceedings and failure to
13 prosecute. (<u>Id.</u>) Nomadix maintains that restarting this whole
14 process two years after the fact, with some witnesses no longer
15 with the company, with witnesses' memories fading, and with the
16 need to get experts and others back up to speed on the case causes
17 Nomadix actual undue prejudice. (<u>Id.</u>; Reply ISO Dismiss at 8-9.)

18     Guest-Tek argues that there is no actual prejudice to Nomadix
19 because loss of witness memory over time is part of any litigation,
20 and where there has been no loss of evidence and no expenses
21 undertaken by Nomadix during the inactive period of the case,
22 little to no actual prejudice caused by the delay has been
23 incurred. (Opp'n to Dismiss at 10-11.) Further, to the extent
24 that the Court finds delay, Guest-Tek argues that there are valid
25 reasons for such delay because of the bankruptcy and potential
26 merger. (<u>Id.</u> at 11.)

27     The Court finds that this factor favors dismissal because
28 there was an unreasonable delay and Guest-Tek's reasons for the

delay are insufficient to overcome Nomadix's showing of prejudice. Nomadix has had the presence of a patent infringement counterclaim unnecessarily over it for two years, during which time Guest-Tek or iBahn could have continued the suit to likely disposition. Further, this length of time creates evidentiary problems even without the loss of material evidence.  Although this fact alone would be insufficient to show prejudice, combined with the unreasonable delay, Nomadix has shown prejudice caused by the failure to prosecute this case.  Further, Guest-Tek's reasons for its delay are insufficient when considered against this prejudice. Waiting to dispose of a lawsuit for reasons of commercial expediency cannot be a proper reason for failure to prosecute.

### 4. Public Policy Favoring Disposition of Cases on the Merits

"Public policy favors disposition of cases on the merits. Thus, this factor weighs against dismissal." Pagtalunan, 291 F.3d at 643.

Nomadix argues that this factor is not that strong for iBahn and Guest-Tek because their conduct in this case "has actually impeded progress" in deciding the case on the merits.  (Mot. Dismiss at 5 (citing In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006).)  Nomadix argues that iBahn and Guest-Tek's failure to continue prosecuting the case in bankruptcy, and continuing failure even after the close of bankruptcy until Nomadix sought dismissal, mitigates the force of this factor against dismissal.

The Court finds that this factors weighs against dismissal, but that under Ninth Circuit precedent, iBahn's and Guest-Tek's

1  failure to move the case toward a disposition on the merits lessens
2  the strength of this factor.

3          **5.   Alternative Sanctions**

4          The district court must "first consider the impact of the
5  sanction and the adequacy of less drastic sanctions" before
6  granting an involuntary dismissal.  <u>Malone</u>, 833 F.2d at 131
7  (internal quotation omitted).

8          Guest-Tek argues that neither dismissal nor any other sanction
9  is appropriate in this case, but to the extent this Court is
10 inclined to do so, some lesser sanction than dismissal should be
11 given.  (Opp'n to Dismissal at 11-12.)  Guest-Tek argues that "[a]t
12 most, a proportional sanction would be the reasonable fees and
13 costs incurred by Nomadix in preparing and filing the application
14 to reopen this case . . . and/or the motion to dismiss with
15 prejudice."  (<u>Id.</u> at 12.)

16         Nomadix argues that any alternative to dismissal would not
17 remedy Nomadix's prejudice of a trial after a needless two year
18 wait.  (Mot. Dismiss at 6.)  Nomadix argues it has "lost the
19 resources it invested previously preparing its case for trial,
20 Nomadix's witnesses' memories . . . have faded, and Nomadix's
21 experts will have to virtually start from scratch to sufficiently
22 re-immerse themselves in the details of the case to be ready for
23 trial."  (<u>Id.</u>)

24         Upon considering the parties' arguments at the hearing and in
25 their submissions, the Court finds that involuntary dismissal is
26 appropriate in this case.  The Court recognizes that involuntary
27 dismissal is a harsh sanction.  However, all affirmative claims by
28 Nomadix against the many defendants are settled and only iBahn's

1  counterclaim and the related claims in that suit remain.  The

2  involuntary dismissal is appropriate because of the unnecessary,

3  prejudicial delay in prosecuting that counterclaim.  The case only

4  continued because of iBahn's counterclaim; thus, iBahn and Guest-

5  Tek had a responsibility to manage and prosecute the case absent

6  some stipulated stay or other formal mechanism of preserving their

7  rights while avoiding continued litigation.  Therefore, the Court

8  finds this factor weighs in favor of dismissal.

9      **C.   Balancing**

10     After considering all the above factors, the Court holds that

11 an involuntary dismissal with prejudice is appropriate in this

12 case.  Therefore, there is no reason for the Court to exercise its

13 discretion and allow Guest-Tek to substitute into the case.[1]

14 **IV.   CONCLUSION**

15     Based on the reasons stated above, the Court GRANTS

16 Plaintiff's Motion to Dismiss and DENIES Proposed Intervenor's

17 Motion to Substitute.  Any remaining claims and counterclaims

18 between Nomadix and iBahn and/or any successor to iBahn in this

19 case are DISMISSED with prejudice.

20

21 IT IS SO ORDERED.

22 Dated: February 8, 2016

23                            DEAN D. PREGERSON
                             United States District Judge

24 _____

25     [1]   The Court notes, but does not rest its decision upon, the
   issue raised by both parties regarding a confidential settlement

26 agreement between Guest-Tek and Nomadix.  (See Mot. Substitute at
   7-8; Opp'n Substitute at 5.)  While the matter is not necessary for

27 the Court's decision, nor fully briefed by the parties, it appears
   that the settlement agreement contains a broad release that would

28 prevent Guest-Tek from prosecuting these claims against Nomadix,
   thus furthering the futility of substitution.